UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------------

|  |  |  |
|---|---|---|
| ELVIRA VIDA, | : | |
|  | : | Case No. 1:18-cv-2428 |
| Plaintiff, | : | |
|  | : | |
| vs. | : | OPINION & ORDER |
|  | : | [Resolving Doc. 33] |
| FIELD OFFICE DIRECTOR, | : | |
| U.S. CITIZENSHIP AND IMMIGRATION | : | |
| SERVICES (USCIS) DISTRICT 13, | : | |
| CLEVELAND DISTRICT OFFICE, *et al.*, | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

-------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Hungarian citizen Elvira Vida came to the United States in January 2008.[1] A year later, she married a U.S. citizen and obtained conditional permanent resident status after that marriage.[2]

In the early morning hours of January 5, 2012, U.S. Citizenship and Immigration Services ("USCIS") agents arrived at Vida's home unannounced.[3] They observed that Vida's husband was absent, but another man (Janos Eiler) was present.[4] A few months later, Vida and her husband divorced, apparently for unrelated reasons.[5]

In March 2015, Vida applied for naturalization, passing the English and U.S. History test a few months later.[6] However, after a hearing, USCIS denied Vida's application.[7] In

---

[1] Doc. 30 ¶ 15.
[2] *Id.* ¶¶ 19–25.
[3] *Id.* ¶ 36.
[4] *Id.* ¶¶ 36–40.
[5] *Id.* ¶ 42.
[6] *Id.* ¶¶ 47–48.
[7] *Id.* ¶¶ 50, 55.

doing so, USCIS alleged that Vida had obtained her permanent resident status through fraud, because she was actually in a relationship with Eiler while married to her husband.[8] Now, on the same basis, Vida faces deportation.[9]

Plaintiff brings this case, asking the Court to review her naturalization denial.[10] The Government moves to dismiss, primarily arguing that the Court cannot review a naturalization denial while removal proceedings are pending.[11] For the following reasons, the Court **GRANTS** Defendants' motion.

## I. Service on the Department of Homeland Security

At the outset, Defendants argue—in a footnote—that the Court should dismiss the case under Federal Rule of Civil Procedure 4(m) for Plaintiff's failure to serve the Department of Homeland Security ("DHS"). This argument is about as persuasive as its location suggests.

Rule 4(m) allows the Court to dismiss claims against a defendant who has not been properly served, it does not authorize the Court to dismiss an entire case.[12] Because Vida brings no claims against DHS, Rule 4(m) is inapplicable.

It is true that 8 C.F.R. § 336.9(b) requires a plaintiff seeking naturalization review to serve (but not sue) DHS. But the Government cites to nothing indicating that the failure to do so warrants dismissal. The Court rejects this argument.

---

[8] *Id.*
[9] *Id.* ¶ 59.
[10] Doc. 30.
[11] Doc. 33. Plaintiff opposes. Doc. 35. Defendants reply. Doc. 36.
[12] Fed. R. Civ. P. 4(m).

Case No. 1:18-cv-2428
Gwin, J.

## II. Judicial Review Under 8 U.S.C. § 1421(c)

Title 8, Section 1421(c) of the U.S. Code authorizes district courts to review naturalization denials. However, naturalization authority resides solely with the Attorney General.[13] Thus, courts cannot order naturalization, courts can only order the Attorney General to naturalize a person. And therein lies the rub. Title 8, Section 1429 of the U.S. Code prohibits the Attorney General from considering a naturalization application while removal proceedings are pending.[14] Thus, the Court cannot provide effective relief while Vida faces removal.[15]

Plaintiff counters that, while § 1429 prohibits "*considering*" a naturalization application, it does not preclude *reviewing* an already denied application; essentially arguing that § 1429's usage is forward looking only. Vida's reading is unduly cramped; the term "consider" seems to preclude *any* examination.[16] Further, this argument runs headlong into *United States v. Zayed*, where the Sixth Circuit held that § 1429 barred review of an already denied application.[17]

Finally, Plaintiff argues that, § 1429 notwithstanding, the Court could still issue a declaratory judgment holding that she would be eligible but for the removal proceedings. While some circuits allow this,[18] the Sixth Circuit has yet to explicitly weigh in.[19]

However, this Court believes declaratory relief is unavailable. First, it would end-run

---

[13] 8 U.S.C. § 1421(a).
[14] 8 U.S.C. § 1429.
[15] *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004).
[16] *See* Webster's Third New International Dictionary 483 (1981) (defining "consider" as "to reflect on").
[17] 368 F.3d at 906.
[18] *Klene v. Napolitano*, 697 F.3d 666, 669 (7th Cir. 2012); *Gonzales v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 260 (3d Cir. 2012).
[19] *See Zayed*, 368 F.3d at 906–07 ("An alternative form of relief is suggested by *Gatcliffe v. Reno* . . . where the district court declared an application to be eligible or naturalization 'but for the pendency of removal proceedings.' In the case at bar, however, Ms. Zayed did not request declaratory relief.").

the congressional policy decisions reflected in § 1429.[20]  But more importantly, the Government would be free to ignore the declaration unless Plaintiff prevailed in the removal proceedings.[21]  A judgment the defendant may ignore is no judgment at all.[22]  The Court is constitutionally empowered to resolve cases, not issue abstract impressions.[23]  Thus, the Court dismisses Plaintiff's claim for judicial review under 8 U.S.C. § 1421(c) without prejudice.[24]

### III.     Judicial Review Under the Administrative Procedures Act

Vida also seeks review under the Administrative Procedures Act (the "APA"). However, APA review is generally unavailable when Congress has established a more specific means of judicial review—like § 1421(c) review.[25]

Plaintiff counters that, because § 1421(c) is practically unavailable, she can use the APA instead.  Even if this were true—which the Court doubts—it would encounter the same obstacle discussed *supra*.  The Court is no more empowered to order the Attorney General to violate § 1429 through the APA than it is through § 1421(c).[26]  Thus, the Court also dismisses Plaintiff's APA claim without prejudice.

---

[20] *See Rahman v. Napolitano*, 385 F. App'x 540, 544 (6th Cir. 2010) ("[I]t would seem to work against the framework set forth in §§ 1447 and 1429 for the district court to undertake an evaluation of a naturalization application where Congress has expressly prohibited the Attorney General from doing so.").

[21] *See Ka Lok Lau v. Holder*, 880 F. Supp.2d 276, 281 (D. Mass. 2012).

[22] *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion—is in the settling of some dispute which affects the behavior of the defendant towards the plaintiff.").

[23] *See e.g., Case of Hayburn*, 2 U.S. 408 (1792) (invalidating a statute which required the court to issue advice the Executive could ignore).

[24] This Court has handled prior similar cases in the same manner.  *See Rahman v. Napolitano*, 385 F. App'x 540 (6th Cir. 2010).

[25] *Memphis Trust Co. v. Bd. of Governors of Fed. Reserve Sys.*, 584 F.2d 921, 925 (6th Cir. 1978).  *See also* 8 C.F.R. § 336.9(a) ("The provisions in part 310 of this chapter shall provide the sole and exclusive procedures for requesting judicial review of final determinations on applications for naturalization made pursuant to section 336(a) of the Act.").

[26] *See Zayed*, 368 F.3d at 906 n.5 ("We are at something of a loss, however, to understand how judicial fiat can overcome the statutory bar of § 1429.").

Case No. 1:18-cv-2428
Gwin, J.

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss and **DISSMISSES** this case without prejudice.

IT IS SO ORDERED.


Dated: July 30, 2019                     *s/        James S. Gwin*
                                         JAMES S. GWIN
                                         UNITED STATES DISTRICT JUDGE